UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

United States of America,

    Plaintiff,

v.

Eric Espinoza-Reynosa[1] (1),

    Defendant.

NO. 19-cr-209 (SRN/DTS)

**REPORT AND RECOMMENDATION**

Bradley M. Endicott and Andrew R. Winter, U.S. Attorney's Office, 300 South Fourth Street, Suite 600, Minneapolis, Minnesota 55415, for the Government.

John C. Brink, Esq., 310 Fourth Avenue South, Suite 1008, Minneapolis, Minnesota 55415, for Defendant.

## INTRODUCTION

Defendant Eric Espinoza-Reynosa is charged with conspiring to distribute methamphetamine in violation of 21 U.S.C. § 841. He seeks to suppress evidence seized from two separate searches:[2] (1) the search of a garage and Ranger Rover, conducted pursuant to a warrant; and (2) the warrantless search of the rental car Espinoza-Reynosa was driving when stopped by the police. Espinoza-Reynosa lacks standing to challenge

---

[1] The Defendant previously informed the Court that his name is "Espinoza-Reynoso," although the Indictment identifies him as "Espinoza-Reynosa." To avoid confusion, the Court will continue to use "Espinoza-Reynosa" until the Government formally alters the Indictment.

[2] Espinoza-Reynosa also challenged the search of two cell phones (Dkt. No. 59). However, because the Government does not intend to use any evidence from that search in its case in chief, Espinoza-Reynosa agrees the motion is presently moot. Def.'s Mem. of Law 5, Dkt. No. 78.

either search, and even had he demonstrated standing, his bases for suppression fall short. The motions to suppress are denied.

## FINDINGS OF FACT

In the summer of 2019, state and federal law enforcement officers were investigating a methamphetamine distribution operation in Minnesota. Gov't Ex. 2 (Appl. for Search Warrant 2). As part of that investigation, the Violent Crime Enforcement Team in Ramsey County relied upon three confidential sources. One source, who had previously provided reliable information, told officers that the traffickers was using a garage belonging to Joseph Bernhardt located at 2808 Silver Lane NE in Saint Anthony, Minnesota, to unload drug shipments. *Id.* at 2-3. Ramsey County Deputy Chris Freichels confirmed that Bernhardt lived in an apartment at that address and learned from property management that Bernhardt also rented garage number 43. *Id.* at 3. A second confidential source, who has also provided reliable and verified information in the past, informed officers that a large shipment of methamphetamine would arrive on July 19, hidden inside a vehicle. *Id.* A third source confirmed July 19 as the date of delivery and said the drugs would be hidden inside an "older model Range Rover." *Id.*

On July 19, 2019, Law enforcement officers set up surveillance in the area of 2808 Silver Lane NE. *Id.*; Nov. 7, 2019 Hr'g Tr. 25-26, Dkt. No. 75. Deputy Kevin Otto took up a position several blocks away in an unmarked Dodge Charger. Hr'g Tr. 26-27. Deputy Otto could not see the garage, but listened to other officers communicate over the radio. *Id.* at 27. A flatbed tow truck carrying an older, light brown Range Rover arrived at 2808 Silver Lane NE shortly after noon and offloaded the Range Rover into garage number 43. Gov't Ex. 2, at 3; Hr'g Tr. 28.

After the Range Rover arrived, a white Nissan Altima pulled up, dropped off a passenger, and left. Hr'g Tr. 28. The Altima lacked a front license plate. *Id.* at 29. The former passenger went into the garage with the Ranger Rover. *Id.* at 28. About half an hour later, the Altima returned with the driver, later identified as Espinoza-Reynosa, as its sole occupant. *Id.* The former passenger came out of the garage carrying a duffel bag. *Id.* He placed the duffel bag in the trunk of the Altima and put something else that officers could not see in the front passenger seat. *Id.* at 28-29. Espinoza-Reynosa left in the Altima and his former passenger walked away on foot. *Id.* at 29.

Deputy Otto began following the Altima northbound on Silver Lake Road and activated his emergency lights. *Id.* at 29-30. Rather than pull over, the Altima cut through a parking lot, turned onto County Road E, and sped away at between 60 and 70 miles per hour. *Id.* at 30-31. Deputy Otto turned on his sirens and pursued the Altima. *Id.* at 31. Espinoza-Reynosa led Deputy Otto on an approximately four minute high-speed chase through a predominantly residential area. *Id.* at 31-33, 40. The chase included an off-road detour into a city park before the Altima got back onto the road. *Id.* at 33-35. After Espinoza-Reynosa attempted to take a turn too quickly, he crashed the Altima into the curb of the read, rendering it inoperable. *Id.* at 35.

Espinoza-Reynosa got out of the Altima and began running through the yards lining the avenue. *Id.* at 36. Deputy Otto got out of his car and chased Espinoza-Reynosa on foot. *Id.* Espinoza-Reynosa eventually ran into a fenced-in backyard, where Deputy Otto found him hiding in a fishing boat. *Id.* at 38. Espinoza-Reynosa got out of the boat and surrendered. Deputy Otto held him at gunpoint until other officers arrived, at which point they handcuffed Espinoza-Reynosa and identified him. *Id.* at 39-40.

While Espinoza-Reynosa was taken into custody, officers searched the Altima. They found the duffel bag still inside the trunk. *Id.* at 40. Inside the duffel bag, they found approximately 52 pounds of methamphetamine. *Id.* Officers found another four pounds of methamphetamine in the front passenger seat. *Id.*

The same day, Deputy Freichels applied for a warrant in Hennepin County to search the garage and Range Rover. Gov't Ex. 2. A judge of the Hennepin County District Court issued the warrant shortly after receiving the application. *Id.* Officers searched the garage and secured the Range Rover that evening. *Id.* (Receipt, Inventory and Return). Although not in the current record, the Parties do not dispute that law enforcement did not search the Range Rover itself until July 30, 2019. Gov't's Mem. of Law 7 n.4, Dkt. No. 82.

## CONCLUSIONS OF LAW

The Fourth Amendment to the United States Constitution guarantees a person's right "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures[.]" U.S. Const., amend. IV. Because the Fourth Amendment contains no enforcement provision of its own, the Supreme Court created "an exclusionary rule that, when applicable, forbids the use of improperly obtained evidence at trial." *Herring v. United States*, 555 U.S. 135, 139 (2009) (citing *Weeks v. United States*, 232 U.S. 383, 398 (1914)).

Espinoza-Reynosa challenges both the search of the Range Rover and the search of the Nissan Altima. However, Espinoza-Reynosa has failed to demonstrate sufficient standing to challenge either search. Further, even addressing them on their merits, his arguments fall short of requiring suppression of any evidence.

4

**I.    Search of the Range Rover**

Espinoza-Reynosa contends the state court warrant was void, both because the issuing court lacked jurisdiction in Ramsey County and because law enforcement waited too long to execute it, each of which—if true—violates Minnesota state statutes. Accepting these arguments, Espinoza-Reynosa faces two problems: (1) he has not shown any privacy interest in the garage or the Range Rover and (2) such violations of state law do not mandate suppression of evidence under the exclusionary rule.

**A.    Fourth Amendment Standing**

Because "Fourth Amendment rights are personal rights that may not be asserted vicariously[,]" a person challenging a search under the Fourth Amendment must demonstrate a privacy interest in the thing or place searched. *United States v. Anguiano*, 795 F.3d 873, 878 (8th Cir. 2015) (internal quotations omitted). "The defendant moving to suppress bears the burden of proving he had a legitimate expectation of privacy that was violated by the challenged search." *United States v. Muhammad*, 58 F.3d 353, 355 (8th Cir. 1995) When analyzing standing, this Court considers:

> ownership, possession and/or control of the area searched or item seized; historical use of the property or item; ability to regulate access; the totality of the circumstances surrounding the search; the existence or nonexistence of a subjective anticipation of privacy; and the objective reasonableness of the expectation of privacy considering the specific facts of the case.

*Anguiano*, 795 F.3d at 878 (quoting *United States v. Gomez*, 16 F.3d 254, 256 (8th Cir. 1994)).

Espinoza-Reynosa has not demonstrated that he had a legitimate expectation of privacy in either the garage or the Range Rover. On the record before the Court, the sole individual with a possessory interest or any level of control over the garage is Bernhardt,

5

the tenant who rented the garage. In fact, there is no evidence that Espinoza-Reynosa had ever been inside the garage or had otherwise been given permission to use it. Although the Court cannot say with metaphysical certainty that Espinoza-Reynosa lacked any subjective anticipation of privacy in the garage, he has not met his burden to demonstrate it.

Similarly, Espinoza-Reynosa offers nothing to support a finding that he has a privacy interest in the Range Rover. He has not provided a title, nor was he seen driving or otherwise controlling the vehicle. To the contrary, only at some point after the Range Rover arrived on a flatbed tow truck did Espinoza-Reynosa arrive, driving a different vehicle. Again, lacking any indicia that he had a legitimate expectation of privacy in the vehicle, Espinoza-Reynosa cannot challenge the search of the Range Rover.

### B.   State Statutory Violations

Had Espinoza-Reynosa met his burden and demonstrated standing to challenge the search of the Range Rover, suppression would still be unnecessary. Espinoza-Reynosa first argues the issuing Hennepin County judge lacked jurisdiction under Sections 626.06 and 626.13 of the Minnesota Statutes to issue a search warrant for a residence in Ramsey County. He further argues the warrant was executed on the Range Rover eleven days after it was issued, a violation of Minn. Stat. § 626.15, which requires a warrant to be executed and returned within ten days.[3]

---

[3] Espinoza-Reynosa also argues the officers violated an "axiomatic" principle that a warrant may only be executed once because they searched the garage on July 19 and the Range Rover, part of the same warrant, several days later. However, he cites no authority for this purported axiom. And, although it will normally be the case that law enforcement will search all places authorized by a warrant in one execution, the Court found no binding authority constitutionally requiring police to do so.

Even assuming the search violated state law, the exclusionary rule does not require suppression of this evidence. "[F]ederal courts in a federal prosecution do not suppress evidence that is seized by state officers in violation of state law, so long as the search complied with the Fourth Amendment." *United States v. Bach*, 310 F.3d 1063, 1066 (8th Cir. 2002). Espinoza-Reynosa does not argue that either state law violation raises a constitutional concern. Although she perhaps acted outside her jurisdiction,[4] the Hennepin County District Court judge does not appear to have abandoned her neutrality. The warrant affidavit was made on oath and affirmation by Deputy Freichels. The warrant specifically describes the places to be searched by providing an address and description of the Range Rover inside the garage. *Cf. United States v. Faulkner*, 826 F.3d 1139, 145-46 (8th Cir. 2016) (declining to suppress evidence obtained through a GPS tracking device where officers placed the device on the car outside of issuing judge's county, but where all constitutional warrant requirements were satisfied).

One may construe Espinoza-Reynosa's concern that the warrant was "timed out" under Minnesota law as also raising a staleness argument, which is constitutional in nature. A warrant may become stale if the probable cause that existed at the time the warrant was issued has dissipated by the time it is actually executed. *United States v. Robinson*, 536 F.3d 874, 877 (8th Cir. 2008). Staleness concerns undoubtedly motivate rules such as Minnesota's 10-day execution and return requirement. Those concerns are not present here, however. Officers searched the garage and secured the Range Rover within hours of receiving the warrant. The vehicle was in police custody until officers

---

[4] The Court takes judicial notice that St. Anthony, Minnesota is part of both Hennepin and Ramsey Counties. The state court judge reviewing the warrant would not necessarily know, by the address alone, whether she was acting outside her jurisdiction.

7

searched it on July 30, so there was no possibility that any contraband or evidence was moved between the issuance of the warrant and the search. There is no constitutional concern that might arise from noncompliance with Minnesota's warrant requirements present in this instance.

Because additional, state-mandated safeguards were violated, rather than the protections of the Fourth Amendment which the exclusionary rule was designed to enforce, the evidence obtained from the search of the garage and Range Rover need not be suppressed.

## II.    Search of the Nissan Altima

Espinoza-Reynosa also challenges the warrantless search of the Nissan Altima officers conducted after arresting him. He argues they lacked probable cause to search the car without a warrant. Again, however, Espinoza-Reynosa faces a dual conundrum: (1) he abandoned the Altima, and thus any expectation of privacy in it or its contents, during his flight from police; and (2) had he not abandoned the vehicle, officers still had ample probable cause to search the Altima for evidence of drug trafficking.

### A.    Abandonment and Standing

As discussed above, a person cannot vicariously challenge the search of a thing in which they have no privacy interest. *Anguiano*, 795 F.3d at 878. "What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection." *Katz v. United States*, 389 U.S. 347, 351-52 (1967). And when a person abandons his property, he "has relinquished his reasonable expectation of privacy." *United States v. Nowak*, 825 F.3d 946, 948 (8th Cir. 2016) (quoting *United States v. James*, 534 F.3d 868, 873 (8th Cir. 2008)). This Court's determination of whether

property was abandoned is based upon an objective review of the totality of the circumstances known to law enforcement. *Id.*

Espinoza-Reynosa relinquished any privacy interest he had in the Altima and any property inside it, including the duffel bag in the trunk, when he fled the car. *Id.* at 948-49 (holding that defendant abandoned his backpack by fleeing his friend's car during a traffic stop and leaving the backpack behind). After leading Deputy Otto on a high speed chase and crashing the Altima on a public street, Espinoza-Reynosa left the car and its contents and continued his flight on foot. The police had no other indication that Espinoza-Reynosa intended to place the car and its contents in somebody else's safekeeping. Any desire he may well have had to return and reclaim the property is irrelevant. *Id.* at 948 (citing *United States v. Basinski*, 226 F.3d 829, 836-37 (7th Cir. 2000)). Much like trash sitting on the curb, any curious passersby could have rooted through the Altima and found exactly what the police did. Because Espinoza-Reynosa has no legitimate expectation of privacy in the abandoned Altima, he lacks standing to challenge the search of it.

### B.   Probable Cause

Even assuming, again, that Espinoza-Reynosa had demonstrated standing to challenge the search of the Nissan Altima, law enforcement had sufficient probable cause to search the vehicle for contraband and evidence of drug-related offenses. Although the Fourth Amendment generally requires officers to secure a warrant, law enforcement may search an automobile without a warrant as long as they have probable cause to believe the car contains evidence of a crime. *E.g.*, *United States v. Mayo*, 627 F.3d 709, 713 (8th Cir. 2010). Officers have such probable cause "when, given the totality of the

9

circumstances, a reasonable person could believe there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.*

Given the totality of the circumstances and the facts known by at least some of the officers in the investigation, law enforcement had probable cause to search the Altima. As set forth in the application for the search warrant to search the garage and Range Rover, three separate confidential sources had informed officers, albeit in varying levels of detail, that a shipment of methamphetamine would arrive at a garage belonging to Bernhardt on July 19, 2019, stowed inside an older model Range Rover. Gov't Ex. 2 (Appl. 2-3). Before the shipment arrived, officers verified some details by confirming that Bernhardt lived at the address given by one of the sources and identifying which garage he rented at the apartment complex. *Id.* On the day the shipment was supposed to arrive, police saw an older model Range Rover arrive on a tow truck, again corroborating details provided by the confidential sources. *Id.* Police then saw a man go into the garage and come out a short time later, place a duffel bag and another item in the Altima, and then leave on foot. At this point, law enforcement had probable cause to believe there were drugs in the Altima and told Deputy Otto to stop the car. Espinoza-Reynosa's subsequent flight only amplifies the existing probable cause to search the vehicle. *See Mayo*, 627 F.3d at 714 (identifying defendants' nervous behavior during a traffic stop as contributing to probable cause to search the van).

Espinoza-Reynosa suggests that Deputy Otto, the arresting officer, did not demonstrate sufficient personal knowledge during his testimony to support probable cause to search the vehicle for drugs, and instead only had probable cause to stop the vehicle for traffic violations. This is irrelevant as a legal matter because Deputy Otto was

10

one member of a larger investigation, had been briefed before the operation began, and was in radio contact with other officers. He need not have firsthand knowledge of all the details contributing to probable cause. *E.g.*, *United States v. Frasher*, 632 F.3d 450, 453 (8th Cir. 2011). As a practical matter, the Government had already submitted the warrant application, including the affidavit of Deputy Freichels, into evidence. The affidavit provides many of the key details known to officers that also contribute to the probable cause to search the Nissan Altima. The Government did not need to rehash these details, which may or may not have been within Deputy Otto's personal knowledge, during the deputy's testimony.

Further, Deputy Otto's testimony that he witnessed Espinoza-Reynosa committing traffic violations is not at all entangled with the probable cause to search the vehicle. The actual motivations of a police officer, no matter how pretextual, do not render a traffic stop unconstitutional if the officer also has probable cause to believe the driver has committed a traffic violation. *See, e.g.*, *Whren v. United States*, 517 U.S. 806, 816 (1996). Even before Deputy Otto attempted to pull Espinoza-Reynosa over, for a traffic violation or otherwise, law enforcement had probable cause to search the Altima for evidence of drugs. Because officers had probable cause, suppression is unwarranted.

## RECOMMENDATION

For the reasons set forth above, the Court RECOMMENDS THAT:

1. Eric Espinoza-Reynosa's First Motion to Suppress Any Evidence Obtained as a Result of Any Illegal Searches or Seizures [Dkt. No. 58] be DENIED.

2. Eric Espinoza-Reynosa's Second Motion to Suppress Any Evidence Obtained as a Result of Any Illegal Searches or Seizures [Dkt No. 59] be DENIED AS MOOT.

3. Eric Espinoza-Reynosa's Third Motion to Suppress Any Evidence Obtained as a Result of Any Illegal Searches or Seizures [Dkt. No. 60] be DENIED.

Dated: January 6, 2020

                                                                                    s/ David T. Schultz
                                                                                    DAVID T. SCHULTZ
                                                                                    United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).