UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>v.<br><br>Eric Espinoza-Reynosa,<br><br>Defendant. | Case No. 19-cr-209(1) (SRN/DTS)<br><br>**ORDER ON OBJECTIONS TO<br>REPORT AND RECOMMENDATION** |

Bradley M. Endicott and Andrew R. Winter, U.S. Attorney's Office, 300 South Fourth Street, Suite 600, Minneapolis, MN 55415, for the United States of America.

John C. Brink, Esq., 310 Fourth Avenue South, Suite 1008, Minneapolis, MN 55415, for Defendant.

SUSAN RICHARD NELSON, United States District Judge

Before the Court are Defendant Eric Espinoza-Reynosa's[1] Objections ("Def's R&R Obj.") [Doc. No. 92] to the January 6, 2020 Report and Recommendation ("R&R") [Doc. No. 89] filed by Magistrate Judge David T. Schultz. Defendant moved to suppress evidence seized from three searches: (1) the search of a garage and Range Rover within the garage,

---

[1] The Court is aware that there is some confusion over the exact spelling of the defendant's name. (*See* Report & Recommendation (R&R) [Doc. No. 89] at 1 n.1 (noting that the defendant had previously indicated his name was spelled Espinoza-*Reynoso*, but continuing to use the spelling indicated on the docket until the indictment is changed); *see also* Def.'s R&R Obj. [Doc. No. 92] at 1 (spelling Defendant's name as "Espinoza-*Renosa*" (emphasis added).) To avoid confusion, the Court continues to use the name indicated on the docket.

1

pursuant to a state court warrant (*see* Def.'s First Mot. To Suppress [Doc. No. 58]); (2) the search of two cellphones pursuant to a federal search warrant (*see* Def.'s Second Mot. To Suppress [Doc. No. 59]); and (3) the warrantless search of a Nissan Altima, rented and driven by the Defendant, during the time leading up to his arrest, (*see* Def.'s Third Mot. To Suppress [Doc. No. 60]). On November 7, 2019, the magistrate judge held an evidentiary hearing on the motions. (*See* Minute Entry [Doc. No. 72].) Following the hearing, the judge issued his R&R in which he recommended denying Defendant's First Motion to Suppress (garage and Range Rover) and Third Motion to Suppress (Nissan Altima) due to the Defendant's lack of standing to challenge any Fourth Amendment violations related to those searches. (R&R at 11–12.) In the alternative, the judge held that even when considering the motions on the merits, suppression was unwarranted. (*See* R&R 1–2, 11–12.) Magistrate Judge Schultz also recommended denying as moot Defendant's Second Motion to Suppress (cell phone searches) given the government's assertion—and Defendant's acknowledgment—that it would not use evidence from the cell phones at trial. (*Id.* at 1 n.2.)

On January 21, 2020, Defendant objected to Judge Schultz's R&R with respect to the denial of his motions to suppress the searches of the garage, Range Rover, and Nissan Altima.[2] (*See* Def.'s R&R Obj. at 1–8.) He does not object to the magistrate judge's

---

[2] As a preliminary matter, Defendant requests a ruling that he did in fact challenge the search of the garage at issue. (*See* Def.'s R&R Obj. at 2, 2 n.1.) He points out that the government took the position that he did "not challenge the search of the garage itself," but that the magistrate judge never formally ruled on that dispute. (*Id.* 2 (noting the government's position), 2 n.1.)
   The Court finds that Defendant has challenged the search of the garage itself. As noted in Defendant's First Motion to Suppress [Doc. No. 58], the garage search resulted in evidence consisting of tools, law enforcement observations, and a brown Range Rover

conclusion regarding the mootness of his motion related to the cell phone searches, and accordingly, the Court does not address that motion.

For the reasons discussed below, Defendant's Objections are overruled, and the R&R is affirmed and adopted as set forth below.

I.  BACKGROUND

Defendant does not appear to contest the facts as set forth in R&R. Accordingly, the Court only briefly recites the relevant facts here. (*See* R&R at 2–4.)

In the summer of 2019, state and federal law enforcement officers were investigating a purported methamphetamine distribution operation in Minnesota. (*Id.* at 2.) As part of that investigation, law enforcement relied on three confidential sources, who informed law enforcement that drug traffickers were using a garage at an apartment complex in Saint Anthony, Minnesota, to unload drug shipments; the garage was rented by an individual living at the apartment complex. (*Id.*) A Ramsey County Deputy verified that the individual identified by the confidential sources lived at the apartment complex, and in fact rented garage 43 on the property. (*Id.*) The same confidential sources also informed officers that a shipment of methamphetamine would arrive on July 19, hidden inside an older-model Range Rover. (*Id.*)

---

vehicle. (Def.'s First Mot. To Suppress at 1.) A search of the Range Rover resulted in three packages of suspected methamphetamine, and a small piece of tape with what appeared to be a fingerprint on it. (*Id.*) Defendant objected to each and every piece of evidence obtained from the search of the garage and Range Rover. (*Id.* at 1–2.) Consequently, while Defendant did not explicitly state that he objected to the search of the garage as a whole, he has functionally done so by objecting to each and every piece of purported evidence found in that search. (*Id.*)

3

Law enforcement officers set up surveillance in the area of garage 43 on July 19, 2019. (*Id.*) Just as the sources had reported, a flatbed tow truck arrived at the property carrying an older, light brown Range Rover, and offloaded the vehicle into garage number 43. (*Id.*) Shortly thereafter, a white Nissan Altima pulled up, dropped off a passenger, and left. (*Id.* at 3.) The Altima lacked a front license plate. (*Id.*) The former passenger entered the garage containing the Range Rover; about a half hour later, the Altima returned with the driver—later identified as the Defendant—as its sole occupant. (*Id.*) The former passenger exited the garage with a duffel bag, placed it in the trunk of the Altima, then put something else that officers could not see in the front passenger seat. (*Id.*) The Defendant then drove away in the Altima, while the former passenger departed on foot. (*Id.*)

Law enforcement followed the Altima, and eventually attempted to pull over the vehicle. (*Id.*) Rather than pull over, the Defendant led police on a high-speed chase for approximately four minutes. (*Id.*) During the chase, the Defendant went through a parking lot, a residential area, and took at least one off-road detour through a city park. (*Id.*) While attempting a turn at high speed, however, the Defendant crashed the Altima, rendering it inoperable. (*Id.*) Still, the chase did not end there. Defendant exited the Altima and ran on foot through the yards lining the avenue where he had crashed. (*Id.*) Eventually, law enforcement cornered the Defendant in a fishing boat in a fenced-in backyard, at which point he was arrested and identified. (*Id.*)

While Defendant was being taken into custody, and without a warrant, law enforcement searched the Altima. (*Id.* at 4.) They found the duffel bag in the trunk containing approximately 52 pounds of methamphetamine, and another four pounds of

4

methamphetamine in the front passenger seat. (*Id.*) Law enforcement then applied for a warrant in Hennepin County to search the garage and Range Rover back at the St. Anthony apartment. A Hennepin County District Court judge issued the warrant shortly thereafter. (*Id.*) Officers searched garage 43, and secured the Range Rover, but did not search the vehicle itself until July 30, 2019. (*Id.* at 4–5.)

A few other facts are worth noting. The record is entirely devoid of any evidence that Defendant had any interest in garage 43 at the Saint Anthony property, or that he had ever been inside the garage or been given permission to use it. (*See id.* at 5–6.) Moreover, the record lacks any evidence showing Defendant possessed any interest in the Range Rover. Defendant has not provided title and has never been seen driving or in possession of the Range Rover.

## II. DISCUSSION

In reviewing objections to the magistrate judge's R&R, the Court must undertake an independent, de novo review of those portions of the R&R to which a party objects and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1) (2012); *see also* D. Minn. L.R. 72.2(b)(3).

As noted above, the magistrate judge recommended that Defendant's motions to suppress any evidence obtained from the search of the garage, Range Rover, and the Nissan Altima be denied due to the Defendant's lack of standing to challenge any Fourth Amendment violations related to those searches, or in the alternative because the underlying challenges raised by Defendant did not warrant suppression. (R&R at 4–12.) With respect to Defendant's lack of standing to contest the garage and Range Rover searches, the

5

magistrate judge held that because Defendant had no identifiable interest in the garage and Range Rover, he lacked standing to challenge the search of either one. (*Id.* at 5–6.) With respect to the Nissan Altima, the magistrate judge held that Defendant had abandoned his vehicle—and any privacy interest he had in the vehicle—when he left it behind after crashing it and fleeing on foot. (*Id.* at 8–9.) Defendant objects to the magistrate judge's recommendation on both issues. With respect to the search of the garage and Range Rover, however, Defendant offers no arguments related to standing, and instead focuses on purported underlying violations of state law related to the issuance and timeliness of executing the applicable warrant. (Def.'s R&R Obj. at 2–5.) Regarding the Nissan Altima, Defendant asserts that he has standing to challenge perceived Fourth Amendment violations because he did not abandon the Altima after crashing it, and accordingly still possessed a privacy interest in its contents. (*Id.* at 6–7.) Moreover, Defendant argues that the magistrate judge erred by finding probable cause existed to search the Altima. (*Id.* at 7–8.) The Court addresses each issue in turn.

### A. Search of the Garage and Range Rover

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause . . . ." U.S. Const. amend. IV. Central to Fourth Amendment jurisprudence is the fact that "[s]earches conducted without a warrant are per se unreasonable, subject to a few well-established exceptions." *United States v. Hill*, 386 F.3d 855, 858 (8th Cir. 2004) (citation omitted).

It is equally axiomatic, however, that "Fourth Amendment rights are personal . . . [and] may not be vicariously asserted." *Alderman v. United States*, 394 U.S. 165, 174 (1969). Accordingly, " '[a] person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed.' " *United States v. Douglas*, 744 F.3d 1065, 1071 (8th Cir. 2014) (quoting *Rakas v. Illinois*, 439 U.S. 128, 134 (1978)). Indeed, " 'individual[s] asserting Fourth Amendment rights must demonstrate that [that he or she] personally ha[d] an expectation of privacy in the place searched, and that [his or her] expectation [was] reasonable.' " *United States v. Mosley*, 878 F.3d 246, 255 (8th Cir. 2017) (quoting *United States v. Anguiano*, 795 F.3d 873, 878 (8th Cir. 2015)). This "standing" requirement—which applies to motions to suppress—often involves concepts of ownership or permission, but may include other factors depending on the particular case. *Id.* (citations omitted); *see also United States v. Tortorello*, 533 F.2d 809, 813–14 (2d Cir. 1976) (concluding that a defendant lacked standing to challenge the search of a garage where he alleged no interest in the garage itself and was not present at the time of search), *cert. denied*, 429 U.S. 894 (1976).

The magistrate judge did not err in concluding that Defendant lacked standing to challenge the searches of the garage and Range Rover. As noted above, the record is entirely devoid of any evidence that Defendant had any interest in garage 43 at the Saint Anthony property, or that he had ever been inside the garage or been given permission to use it. Moreover, the record lacks any evidence showing Defendant possessed any interest in the Range Rover. Defendant has not provided title and has never been seen driving or

in possession of the Range Rover. Put simply, Defendant has alleged no interest—much less a privacy interest—in the garage or Range Rover permitting him to challenge purported Fourth Amendment violations surrounding the search of either one. *See Mosley*, 878 F.3d at 255; *Tortorello*, 533 F.2d at 813–14. Moreover, Defendant offers no argument to the contrary. Accordingly, Defendant's objection to the magistrate judge's recommendation to deny Defendant's motion to suppress evidence obtained from the searches of the garage and Range Rover is overruled [Doc. No. 58], and the magistrate judge's recommendation on that motion is adopted and affirmed.[3]

## B. Search of the Nissan Altima

The Court now turns to Defendant's objections to the search of the Nissan Altima. The magistrate judge held that Defendant also lacked standing to challenge the warrantless search of the Nissan Altima because he "relinquished any privacy interest he had in the Altima and any property inside it, including the duffel bag in the trunk, when he fled the car" after crashing it. (R&R at 9.) The magistrate judge relied primarily on *United States v. Nowak*, 825 F.3d 946, 947–49 (8th Cir. 2016), in which the Eighth Circuit held that the defendant, Nowak, abandoned a backpack in his friend's vehicle when he ran from the scene of a traffic stop. The Eighth Circuit noted that whether a defendant has abandoned a piece of property for Fourth Amendment purposes is determined " 'on the basis of the

---

[3] The Court acknowledges that Defendant has raised possible state law violations related to the issuance and execution of the underlying warrant to search the garage and Range Rover, and that the magistrate judge addressed those possible violations in his R&R. However, because the Court holds that the Defendant lacks standing to challenge any purported Fourth Amendment violations related to the search of the garage and Range Rover, the Court need not and does not address those issues.

8

objective facts available to the investigating officers[.]'" *Id.* at 948 (citations omitted). In evaluating those facts, courts consider "the dual factors of whether [a] defendant physically relinquished his property and whether he denied ownership of it," although "a verbal denial of ownership is not necessary for a finding of abandonment" because the question of abandonment is "based on the totality of the circumstances." *Id.* (citations omitted). Similarly, while the fact that "property is discarded in a public, private, or semi-private place is a factor in considering whether the property has been abandoned, [] it is not dispositive." *Id.* at 949 (citation omitted). In Nowak's situation, the Eighth Circuit held that because Nowak physically relinquished his backpack in his friend's vehicle and fled the scene of the traffic stop, said nothing to his friend about his intention related to the backpack, and because there was no evidence that Nowak intended for his friend or anyone else to take care of his backpack in his absence, the objective facts available to officers established that Nowak abandoned his backpack. *Id.*

Defendant argues that he did not abandon his vehicle and that the magistrate judge's reliance on *Nowak* was misplaced because the case is distinguishable. (Def.'s R&R Obj. at 6–7.) Unlike in *Nowak*, Defendant asserts, the property Defendant purportedly abandoned—a Nissan Ultima—was unlike a backpack in that it is not transportable on foot, so leaving it behind should not be construed as relinquishing the property. (*Id.* at 7.) Additionally, Defendant argues that because he was renting the vehicle, he would incur liability if he failed to return it, which suggests a lack of an intent to abandon it. (*Id.* at 7.) Defendant also contends that because he was renting the vehicle, he had a privacy interest in the Altima, and unlike in *Nowak*, Defendant fled in the face of a confrontation with law

9

enforcement, not an innocuous traffic stop. (*Id.*) Considering those differences, Defendant argues that there is a "qualitative constitutionally significant difference between abandonment of [a] backpack and an expensive rental car." (*Id.*)

Even assuming *Nowak* is distinguishable, Eighth Circuit case law conclusively establishes that Defendant abandoned his vehicle—and any accompanying Fourth Amendment privacy interest in it—after crashing it, leaving it behind, and fleeing on foot. In *United States v. Smith*, the Eighth Circuit addressed whether, in the context of a warrantless search of a vehicle, a defendant abandoned said vehicle for Fourth Amendment purposes when, surrounded by police and unable to drive away, he left his vehicle in a drive-thru lane of a fast food restaurant and fled on foot into the surrounding neighborhood. 648 F.3d 654, 657 (8th Cir. 2011), *cert. denied*, 565 U.S. 1138 (2012). The Eighth Circuit noted that the "issue is not abandonment in the strict property right sense, but rather, whether the defendant in leaving the property has relinquished [his] reasonable expectation of privacy so that the search and seizure is valid." *Id.* at 660. In affirming the district court's conclusion that the defendant had abandoned the vehicle, the Eighth Circuit noted that because the defendant had left his car open, with the keys in the ignition, with the motor running, in a public area, the totality of the circumstances indicated that the defendant has "relinquished any legitimate expectation he might have had in the [vehicle] and its contents." *Id.* Indeed, other Eighth Circuit cases with similar facts have reached the same conclusion. *See, e.g.*, *United States v. Smith*, 789 F.3d 923, 929 (8th Cir. 2015) (affirming conclusion that suppression was not warranted where defendant fled from scene of lawful traffic stop, led officers on high-speed chase, then left the vehicle behind after it

10

was rendered inoperable, because defendant "relinquished any legitimate expectation of privacy" by leaving the vehicle behind); *United States v. Walton*, 538 F.2d 1348, 1354 (8th Cir. 1976) (concluding that warrantless search of a suspected bank robber's vehicle, left parked on a public street, unlocked, with the windows down, after the robber fled the police, did not violate any Fourth Amendment right of the suspected bank robber).[4]

Under clear Eighth Circuit case law, Defendant abandoned his vehicle for Fourth Amendment purposes. When law enforcement followed Defendant in the Altima, and eventually attempted to pull over his vehicle, Defendant led police on a high-speed chase through multiple different neighborhoods. He then crashed his vehicle, rendering it inoperable, and left it behind when fleeing on foot. The totality of the circumstances demonstrates that much like the defendant in *Smith*, Defendant intended to abandon his vehicle to effectuate his escape from police after his vehicle was no longer useful to him in fleeing from law enforcement. *See Smith*, 648 F.3d at 657. Moreover, just like in *Smith*,

---

[4] Other circuits have also reached similar conclusions under similar circumstances. *See, e.g.*, *United States v. Falsey*, 566 Fed. App'x 864, 867 (11th Cir. 2014) (concluding defendant abandoned vehicle for Fourth Amendment purposes when defendant left the vehicle in parking lot with doors unlocked, keys inside the vehicle, and left on foot into nearby woods while under the *mistaken impression* he was being chased by police); *United States v. Jefferson*, 451 Fed. App'x 833, 834–35 (11th Cir. 2011) (concluding defendant abandoned vehicle when he fled on foot, leaving the vehicle behind, after a physical altercation with law enforcement at a traffic stop); *United States v. Kirlew*, 291 Fed. App'x 536, 538–39 (4th Cir. 2008) (concluding defendant abandoned vehicle for Fourth Amendment purposes when, while being pursued by police, defendant jumped out of still-moving vehicle and fled on foot), *cert. denied*, 555 U.S. 1123 (2009); *United States v. Washington*, 12 F.3d 1128, 1131–32 (D.C. Cir. 1994) (affirming finding that defendant abandoned vehicle, for Fourth Amendment purposes, when while being chased by police, his vehicle became inoperable and he left it behind and fled on foot), *cert. denied*, 513 U.S. 828 (1994).

Defendant left his vehicle in a public place, open to the public, and fled. *Id.* Indeed, the case for abandonment is arguably stronger here than in *Smith* because, unlike in *Smith*, Defendant's vehicle was rendered inoperable as a result of his flight from law enforcement, undermining any suggestion that he could return to and use the vehicle at a later date. *Id.* In fact, the Court notes that Defendant's situation is essentially identical to the defendant's situation in *United States v. Washington*, 12 F.3d 1128, 1131–32 (D.C. Cir. 1994), *cert. denied*, 513 U.S. 828 (1994), in which the D.C. Circuit affirmed a finding that the defendant had abandoned his vehicle for Fourth Amendment purposes when, after crashing his vehicle and rendering it inoperable while being chased by police, the defendant fled on foot leaving the vehicle behind.

The case law is clear. Defendant abandoned his vehicle for Fourth Amendment purposes when he left it behind and fled on foot after crashing the vehicle while being pursued by police. Accordingly, Defendant's objection to the magistrate judge's recommendation to deny Defendant's motion to suppress evidence obtained from the search of the Nissan Altima [Doc. No. 60] is overruled, and the magistrate judge's recommendation on that motion is adopted and affirmed.[5]

---

[5] Much like the search of the garage and Range Rover, Defendant raised substantive Fourth Amendment arguments surrounding the search of the Nissan Altima. However, because the Court holds Defendant lacks standing to contest the search of the Altima, it need not and does not reach those arguments.

## III. CONCLUSION

Based on this submission and the entire file and proceedings herein, **IT IS HEREBY ORDERED THAT:**

1. Defendant's Objections [Doc. No. 92] to the January 6, 2020 Report and Recommendation [Doc. No. 89] are **OVERRULED**;

2. The January 6, 2020 Report and Recommendation [Doc. No. 89] is **AFFIRMED** and **ADOPTED**, and Defendant's Motions to Suppress Evidence obtained from the search of the garage and Range Rover, as well as the search of the Nissan Altima [Doc. Nos. 58, 60] are **DENIED**. Defendant's Motion to Suppress Evidence obtained from the search of two cell phones [Doc. No. 59] is **DENIED AS MOOT**.

Dated: February 27, 2020

s/Susan Richard Nelson
SUSAN RICHARD NELSON
United States District Judge